UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 DEC 21  PM 5: 26

BY _____
DEPUTY CLERK

Isan Contant,                                    )
           Petitioner,                          )
                                                 )
      v.                                         )        Case No. 5:10-cv-240
                                                 )
Janet Napolitano, U.S. Citizenship               )
and Immigration Services, Daniel                 )
M. Renaud,                                       )
           Respondents.                         )

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(Docs. 3, 7, 16, 19 and 20)

Plaintiff Isan Contant commenced this action by filing a *pro se* Emergency Petition for Writ of Mandamus, seeking review of a decision by the United States Citizenship and Immigration Services ("CIS") with respect to his immigrant classification. The Government has moved to dismiss the petition for lack of jurisdiction. Mr. Contant opposes that motion. The Government is represented by Assistant United States Attorney Carol Shea. Mr. Contant is representing himself.

### Factual Background

Mr. Contant arrived in the United States in 2004 on a tourist visa, and remained in this country after the visa expired. In 2005, he married a United States citizen but did not seek a change in his immigration status. In October 2007, he was convicted of a drug-related felony after entering a guilty plea in New York state court, and was sentenced to one year in prison. Mr. Contant appealed his conviction. On October 25, 2010, the New York Supreme Court Appellate Division, Second Department affirmed the conviction. (Doc. 16-1.) Mr. Contant informs the court that he is seeking further review by the New York Court of Appeals. (Doc. 17 at 3.)

In December 2007, Mr. Contant was charged by United States Immigration and Customs Enforcement ("ICE") with being removable. In March 2008, he was taken into

immigration custody. The Government reports that between May 2008 and June 2010, Mr. Contant received several continuances of his removal proceedings. On June 14, 2010, after an evidentiary hearing, an Immigration Judge ("IJ") ordered Mr. Contant removed to his native Trinidad & Tobago. The removal order became final on September 10, 2010, after the Board of Immigration Appeals affirmed the IJ's ruling. Mr. Contant filed a Petition for Review ("PFR") with the U.S. Court of Appeals for the Third Circuit, and moved to stay the removal. The Third Circuit denied the motion for a stay, finding that Mr. Contant was not likely to succeed on the merits.

Mr. Contant then applied to the United States Supreme Court for a stay of his removal. On October 22, 2010, Justice Alito denied the application for a stay. The PFR remains pending in the Third Circuit. Mr. Contant has since filed an Emergency Petition for Writ of Mandamus in the United States District Court for the Middle District of Pennsylvania, and that court has ordered a temporary stay of all removal activities. (Doc. 19-1 at 1.)

Mr. Conant's emergency petition before this court does not challenge the order of removal generally. Instead, he is contesting the denial of a separate petition he filed with CIS in 2008. Specifically, in June 2008 he filed a Form I-360 petition for special immigrant status, claiming that he had been married to a United States citizen and was a battered spouse.[1]  CIS denied the petition on August 24, 2009, finding that Mr. Contant was not "a person of good moral character." (Doc. 3-1 at 3) (citing Section 204(a)(1) of the Immigration and Nationality Act). In denying the I-360 petition, CIS cited Mr. Contant's criminal history, which included an arrest for robbery on April 2, 2007, with a subsequent charge of misdemeanor assault. Both charges were later dismissed for failure to provide a speedy trial. On November 21, 2005, Mr. Contant was arrested on robbery and harassment charges. Those charges were dismissed as well. In 2004 and 2005, he was twice convicted on pleas of disorderly conduct, and as noted previously, he was

---

[1] The Government asserts that Mr. Contant "could have sought similar relief within the context of his removal proceeding pursuant to 8 U.S.C. § 1229b(b)(2) . . . . He declined to pursue that [ ] track and instead focused his efforts on his avenue within CIS's authority." (Doc. 16 at 3-4.)

2

convicted of a felony drug crime in 2007. CIS found that, "[i]n view of the above, you can not [sic] be found to be a person of good moral character in accordance with Section 101(f)." (Doc. 3-1 at 3-5.) Mr. Contant's motion for reconsideration was denied on July 8, 2010.

On October 12, 2010, Mr. Contant filed his Emergency Petition for Writ of Mandamus with this court. His Petition claims that CIS violated federal law when, prior to denying his I-360 application, it failed to send him a notice of intent to deny ("NOID"). Mr. Contant alleges that because he was not issued a NOID, he was "not given the opportunity to refute the specific negative findings or evidence in the I-360 denial, nor was he given the opportunity to establish any 'extenuating circumstances'" with respect to the question of "'good moral character.'" (Doc. 3 at 4) (emphasis in original). CIS agrees that it did not send a NOID, but in its denial of the motion for reconsideration, explained that it "chose instead to issue a Notice of Action in order to provide [Mr. Contant] with sufficient time and opportunity to submit evidence and/or to refute any negative evidence in order to establish [his] eligibility for the benefit sought." (Doc. 3-2 at 2.)

Mr. Contant also claims that CIS improperly considered his arrests as opposed to only considering his convictions, and failed to recognize that his felony conviction had been appealed. CIS addressed these arguments in its August 24, 2009 decision, noting that federal regulations allowed it to consider whether the applicant had committed "unlawful acts that adversely reflect upon his or her moral character, or was convicted or imprisoned for such acts . . . ." (Doc. 3-1 at 4) (quoting 8 C.F.R. § 204.2(c)(1)(vii)) (emphasis supplied).

At Mr. Contant's request, this court held a status conference on November 3, 2010. Mr. Contant participated in the conference by phone. At the conclusion of the status conference, the court requested supplemental briefing on the question of jurisdiction. Both sides have now submitted their briefs on that issue, with the Government's response submitted in the form of a motion to dismiss for lack of subject matter jurisdiction.

3

## Conclusions of Law and Analysis

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1) even "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (citations omitted). When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). Ultimately, the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).

I.    *Judicial Review Under 8 U.S.C. § 1252(a)(2)(B).*

A district court's jurisdiction to review agency decisions in the immigration context is expressly limited by 8 U.S.C. § 1252(a)(2)(B). Clause (i) of that statute precludes judicial review of "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). Clause (ii) provides that courts lack jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).

Mr. Contant submitted his I-360 application pursuant to 8 U.S.C. § 1154(a)(1)(A)(iii), which permits an alien to petition the Attorney General for immigrant status if the alien can show, among other things, that he married a United States citizen in good faith and was battered or "the subject of extreme cruelty perpetrated by the alien's spouse . . . . " 8 U.S.C. § 1154(a)(1)(A)(iii)(1). Section 1154 is not one of the provisions specified in clause (i) of Section 1252(a)(2)(B). "It is, however, included within 'this

4

subchapter,' as that term is used in clause (ii). The question, then, is whether a decision to grant relief under Section 1154 is 'specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.'" *Ruiz v. Mukasey*, 552 F.3d 269, 274 (2d Cir. 2009) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). The Second Circuit has determined that, because Section 1252(a)(2)(B)(ii) "'is uncharacteristically pellucid' in precluding jurisdiction only when a specified statute itself commits a particular decision to the discretion of the Attorney General," *id.* at 274-75 (quoting *Yu Zhao v. Gonzales*, 404 F.3d 295, 302-03 (5th Cir. 2005)), there must be "'language specifically rendering that determination to be within [the agency's] discretion (*e.g.* 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General, etc.).'" *Id.* at 275 (quoting *Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008)).

Although Section 1154 does not specify that a determination of an alien's status as a battered spouse is "in the discretion of the Attorney General," it does require Mr. Contant to "demonstrate to the Attorney General" that he entered into a good faith marriage and was battered. 8 U.S.C. § 1154(a)(1)(A)(iii)(I). This language, however, could be interpreted as merely requiring the applicant to establish that he can satisfy the statutory requirements of the "battered spouse" petition. The language in Section 1154(a)(1)(A) does not specifically authorize the Attorney General to exercise discretion in deciding whether these criteria are met, and thus judicial review of a decision made pursuant to that Section is generally not precluded. *See Ruiz*, 552 F.3d at 275-76.

As noted in *Ruiz*, however, the analysis shifts when the court considers Section 1154(a)(1)(J). *See id.* at 276 n.5. That subsection states that when acting on certain types of petitions, including the one submitted by Mr. Contant, "the Attorney General shall consider any credible evidence relevant to the petition. The determination of what evidence is credible and the weight to be given that evidence *shall be within the sole discretion of the Attorney General*." 8 U.S.C. § 1154(a)(1)(J) (emphasis supplied). Indeed, the *Ruiz* decision specifically cited battered spouse petitions as involving agency discretion, and thus possibly precluding judicial review. *Ruiz*, 552 F.3d at 276 n.5

5

("[D]ecisions regarding whether to credit and how to weigh evidence supporting a petition made by an applicant claiming to be a battered spouse or child are within the 'sole discretion of the Attorney General.'" (quoting 8 U.S.C. § 1154(a)(1)(J)).[2]

A fundamental dispute in this case is whether CIS should have given any weight to Mr. Contant's prior arrests, or to his conviction that was on appeal. In determining how much weight to give these events, CIS used the discretion specifically authorized by Section 1154(a)(1)(J).[3] Indeed, in its ruling on the question of moral character, CIS stated that "as a matter of discretion," it would consider two of Mr. Contant's prior arrests, and that "[a]s a matter of discretion, and in consideration of the entire record, this office does not find that the record demonstrates your qualification under this requirement." (Doc. 3-1 at 4-5.) Moreover, in the denial of Mr. Contant's motion for reconsideration, CIS explained that it considered the conviction that was on appeal because "for the purposes of discretionary assessment, even though you are appealing the conviction, the fact that you plead guilty to the charge . . . has weight in determining your moral character." (Doc. 3-2 at 2.)

It is therefore plain that, in reviewing and assessing the merits of Mr. Contant's petition, CIS used the discretion specifically authorized by Section 1154(a)(1)(J). The court thus finds that CIS's determination of Mr. Contant's moral character, and specifically its weighing of the evidence, was performed "in the discretion of the Attorney General or the Secretary of Homeland Security," and that judicial review is precluded by 8 U.S.C. § 1252(a)(2)(B)(ii).[4]

---

[2] Because a battered spouse petition was not before it, the *Ruiz* court declined to determine whether "any court would have jurisdiction to review petitions concerning such determinations." *Ruiz*, 552 F.3d at 276 n.5.

[3] Mr. Contant claims that Section 1154(a)(1)(J) does not apply "because the Attorney General never made any decisions at all in the instant case." (Doc. 17 at 3.) It is well established, however, that with respect to immigration matters, CIS acts on behalf of the Attorney General. *See, e.g., Escaler v. U.S. Citizenship and Immigration Servs.*, 582 F.3d 288, 290 (2d Cir. 2009).

[4] Mr. Contant also argues that *Ehiemua-Wiggins v. Napolitano*, 2010 WL 519704 (S.D. Tex. Feb. 8, 2010) mandates a different result. In *Ehiemua-Wiggins*, the court found that because Section 1154(a)(1)(A)(iii) is not specified in clause (i) of Section 1252(a)(2)(B), there is no automatic

6

Mr. Contant's second claim is that CIS erred when it failed to send him a NOID. While this question may not be barred from consideration by 8 U.S.C. § 1252(a)(2)(B), Mr. Contant's assertion is misplaced as a matter of law. Mr. Contant premises his argument on 8 C.F.R. § 204.2(c)(3)(ii), which states that if a petition is denied, "the self-petitioner will be notified in writing of the reasons for the denial and of the right to appeal the decision." CIS clearly satisfied this requirement in its written decision of August 24, 2009. (Doc. 3-1.) There is no requirement that the Government's notice must take the form of a NOID.[5]

Moreover, instead of a NOID, Mr. Contant was sent a Notice of Action ("NOA"). In the denial of Mr. Contant's motion for reconsideration, CIS stated that the NOA was intended to provide Mr. Contant with "sufficient time and opportunity to submit evidence and/or to refute any negative evidence in order to establish your eligibility for the benefit sought." (Doc. 3-2 at 2.) Mr. Contant fails to make any claim that this NOA was insufficient or prejudicial, or that a NOID was in any meaningful way preferable.

For the reasons state above, the court finds that Mr. Contant's claim with respect to the lack of a NOID is not "colorable" and thus does not give rise to federal subject matter jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (claim may be dismissed for want of subject matter jurisdiction if it is "wholly insubstantial and frivolous").

II.    *Judicial Review Under The Administrative Procedures Act.*

Mr. Contant's petition cites several other sources of potential federal jurisdiction, including the Declaratory Judgment Act (28 U.S.C. § 2201), the federal mandamus

---

jurisdictional bar. The court also found that under Section 1154(b), the Attorney General is required to approve petitions "if he determines the facts stated in the petition are true . . . ." 2010 WL 519704, at *3 (citing 8 U.S.C. § 1154(b)). There is no indication that the *Ehiemua-Wiggins* court was required to consider a weighing of evidence under Section 1154(a)(1)(J). The case is therefore distinguishable, and in any event, is not controlling precedent.

[5] In its motion to dismiss, the Government points out that Mr. Contant may have based his claim upon an earlier version of the regulation, which was amended in 2007 to delete the NOID requirement. (Doc. 16 at 8 n.6) (citing 72 Fed. Reg. 19100-01, 2007 WL 1115918). That provision would not apply here, as Mr. Contant filed his petition in 2008.

statute (28 U.S.C. § 1361), and the Administrative Procedures Act ("APA"). Beginning
with the APA, judicial review is not available if "(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). As
discussed above, judicial review of the moral character determination is barred by 8
U.S.C. § 1252(a)(2)(B)(ii) because it involved the discretionary weighing of evidence.
As a result, Mr. Contant cannot receive relief under the APA with respect to that
determination.

On the question of the NOID, the APA empowers federal courts to "compel
agency action unlawfully withheld or unreasonably delayed; and hold unlawful and set
aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5
U.S.C. § 706. The regulation cited by Mr. Contant, 8 C.F.R. § 204(c)(3)(ii), did not
require CIS to send a NOID. Instead, CIS was required to send written notification of the
denial and the right to appeal, and the record clearly demonstrates compliance with this
requirement. (Doc. 3-1.) Accordingly, the court finds that no agency action was
unlawfully withheld, and that Mr. Contant's claim under the APA must be dismissed.

III.    *Judicial Review Under The Mandamus Statute.*

Nor is Mr. Contant entitled to relief under the federal mandamus statute. The
statute provides that district courts shall have "original jurisdiction of any action in the
nature of mandamus to compel an officer or employee of the United States or any agency
thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus
is considered a "'drastic and extraordinary' remedy 'reserved for really extraordinary
causes.'" *Cheney v. United States*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*,
332 U.S. 258, 259-60 (1947)); *see In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555,
562 (2d Cir. 2005).

The Second Circuit has established three prerequisites to the issuance of a writ of
mandamus: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and
peremptory duty on the part of the defendant to do the act in question; and (3) no other
adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (quoting

*Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)). A writ of mandamus "will issue only to compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). A "party seeking mandamus has the burden of showing that its right to issuance of a writ is clear and indisputable." *Will v. United States*, 389 U.S. 90, 96 (1967).

As with the APA, the mandamus statute does not offer any relief with respect to the denial of Mr. Contant's I-360 application, since determination of his moral character required the statutorily-authorized use of agency discretion. Furthermore, federal law did not require CIS to send a NOID, and thus did not "plainly define" his right to any such action. The court therefore finds no basis for granting Mr. Contant's motion for a writ under the federal mandamus statute.

IV.      *Judicial Review Under The Declaratory Judgment Act.*

Finally, Mr. Contant is not entitled to relief under the Declaratory Judgment Act. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not confer subject matter jurisdiction; instead, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment. *See Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996).

Here, Mr. Contant has not set forth a "colorable" claim over which this court has subject matter jurisdiction. *Arbaugh*, 546 U.S. at 513 n.10. Accordingly, there is no basis for relief under the Declaratory Judgment Act. Furthermore, even assuming subject matter jurisdiction, the Second Circuit has explained that district courts may, in their discretion, decline to entertain a declaratory action:

> The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not. The statute reads, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . .

9

*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).  Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict Courts possess discretion in determining whether to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); *Id.* at 287 ("In the declaratory judgment context, the normal principles that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").  For the reasons set forth above, this court has no jurisdiction over CIS's determination with respect to Mr. Contant's moral character, and any claim arising out of the lack of a NOID is not colorable.  The court thus declines to entertain Mr. Contant's claims under the Declaratory Judgment Act, and to the extent that his petition is based upon that Act, it is DENIED.

### Conclusion

For the reasons set forth above, Mr. Contant's Emergency Petition for Writ of Mandamus (Doc. 3) is DENIED.  The Government's motion to dismiss (Doc. 16) is GRANTED, and all remaining motions (Docs. 7, 19 and 20) are DENIED as moot. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 21st day of December, 2010.

Christina Reiss
United States District Court Judge